Katie BRUCE, Appellant,

v.

Alden ALLEY, d/b/a Alden Alley & Son, Appellees.

Court of Appeals of Kentucky.

June 11, 1965.

James A. Crumlin, Louisville, Kenneth H. Goff, Leitchfield, John P. Sandidge, Louisville, for appellant.

Delma L. Mauzey, Leitchfield, L. A. Faurest, Elizabethtown, for appellees.

HILL, Judge.

On the trial of this case in circuit court a directed verdict for defendant was given at the conclusion of the plaintiff's evidence. Plaintiff appeals.

The question presented is whether there was sufficient evidence of negligence and proximate cause to require submission of those issues to the jury.

December 7, 1957, appellee installed a gas floor furnace in Christ Temple Church, Leitchfield, Kentucky.

February 9, 1958, appellant came to church in the afternoon and shortly became ill and unconscious. She was taken to a hospital and remained there until the following Wednesday. Several other persons in this church were likewise stricken the same day, but not as severely as appellant. Appellant claims her condition resulted from inhaling carbon monoxide fumes from the improperly installed or improperly vented floor furnace. Dr. Nichols and Dr. O'Neil testified these stricken people suffered from symptoms of carbon monoxide poisoning. The former testified carbon monoxide is a by-product of gas combustion.

Some of the congregation entertained some question as to whether the furnace was operating properly and on February 8, 1958, the day before the injury and the planned all-day meeting, appellee was notified and requested to inspect the furnace and make any necessary corrections. Appellee sent his employee, Bill Bevil, to investigate and correct any defect. Bevil made some minor adjustment in the gas and air mixture control system.

For the curious it may be explained that the long delay in the disposition of this case was caused by various circumstances, among which were a mistrial, death of a trial judge, and other circumstances about which no complaint is made here by either litigant.

Appellant contends there was sufficient evidence of negligence and proximate cause to require submission to the jury; that the vents only extended two feet above the ground while Kentucky Department of Safety regulations required them to extend above the roof; that the floor furnace was placed too near the ground without sufficient space to allow proper intake of air; that such vents as were used were improperly installed so as to permit condensation of water in the vent and such condensed water returned to the furnace preventing proper combustion. On the question of proximate cause, appellant virtually contends the rule "Res Ipsa Loquitur" should apply, especially in view of the dangerous substance in the furnace.

On behalf of appellee it is urged that appellant did not prove negligence in the installation of the furnace; that, on the other hand, he proved it was properly and customarily installed; that there was no evidence the carbon monoxide poisoning was caused by any defect in installation. Appellee stoutly contends he found a "rag"

in the vent after the claimed injury. We shall thoroughly analyze this defense later.

KRS 13.081 authorizes the Kentucky Department of Safety to adopt reasonable rules and regulations pertaining to installation of gas furnaces such as we have in the present case.

Appellant's witness, Southworth, a Deputy State Fire Marshal, testified that such a rule or regulation had been adopted, and Rule 5.53, page 47, provided that vents in the classification of those with which we are concerned here must extend above the top of flat roofs or two feet above the highest part of a wall. He testified the vents in the Christ Temple Church were not installed according to such rules and regulations.

It was held in Andreoli v. Natural Gas Company, 57 N.J.Super. 356, 154 A.2d 726, that evidence was sufficient to require submission to the jury in a case of improper installation of gas fixtures in violation of the rules and regulations of the Natural Board of Fire Underwriters approved by the New Jersey State Police rules and regulations. In the Andreoli case, the court said:

"In the present case plaintiff established in the clearest way that defendants had not followed the safety standards of the industry, nor, indeed, conformed to the common standard used in installing the type of equipment here involved. This showing was, at the very least, sufficient to have the jury pass on the question of negligence."

So, in the present case we have a clear violation of a properly adopted safety regulation. In addition, natural gas is a dangerous substance requiring a high degree of care. Anderson v. Atlantic City, 145 A. 238, 7 N.J.Misc. 297; Washington Gas Light Company v. Biancaniello, 87 U.S.App.D.C. 164, 183 F.2d 982; Cleveland Gas Co. v. Wollen, 30 Tenn.App. 282, 205 S.W.2d 754; and Rowan v. Western Kentucky Gas Co., D.C., 82 F.Supp. 591, wherein it is said:

"Gas like electricity, is easily subject to control and of inestimable usefulness in the hands of those who know its propensities. To the great masses of people it is a deadly instrumentality incapable of perception of its presence until that presence is made known by calamity or tragedy from explosion or fire. Thus the law should and does place upon those who handle gas an obligation to handle it in such way that it is harnessed for benefit to the purchaser and profit to the seller. The 'ordinary care' required is not the care of an ordinary person for the average person knows nothing of how to handle gas. Ordinary care in this instance means ordinary care by people learned in the handling of gas."

That carbon monoxide poisoning was the cause of appellant's illness there can be little doubt. Appellee does not seriously contend that appellant's illness was not caused by inhaling poisonous fumes. In fact, numerous persons in the church on the day in question became ill with similar symptoms.

This Court, like the authorities from other jurisdictions referred to above, has recognized the liability of persons handling natural gas, or gas fixtures, for damages resulting from improper handling or installations incident thereto. Louisville Gas Co. v. Gutenkentz, 82 Ky. 432, 6 Ky. Law Rep. 464; Kentucky-West Virginia Gas Company v. Slone, 238 S.W.2d 476. In the Slone case, this Court adopted the following quotation from a Florida case:

"Negligence may be inferred from circumstances properly adduced in evidence, provided those circumstances raise a fair presumption of negligence; and circumstantial evidence alone may authorize the finding of negligence."

Also, in a later case of Louisville Gas & Electric Co. v. Sanders, 249 S.W.2d 747, a case involving escaping gas, this Court said:

"The doctrine of res ipsa loquitur applies here if the damage suffered by appellee's trees, shrubs and grass can be traced to gas escaping from an instrumentality controlled exclusively by appellant."

Also, in the very recent case of Current v. Columbia Gas of Ky., 383 S.W.2d 139, this Court held a jury question was presented by a showing the defendant gas company negligently "cut in" the gas into an unvented space heater. Inasmuch as the Current opinion, supra, deals with proof requirements also, we quote the following from it:

"It is basic that a plaintiff is entitled to the most favorable inferences and construction attributable to the evidence, upon consideration of a motion for directed verdict against him; if such evidence, so regarded, substantially tends to support the cause of action, the verdict should not be directed against him. Johnson v. Vaughn, Ky., 370 S.W.2d 591; 18 Ky.Digest, Trials, ▮▮▮▮▮▮ In our view, the evidence we have discussed amply warrants a factual issue whether the alleged injuries of the appellants were proximately caused by negligence of appellee in cutting gas into an improperly vented space heater. Therefore, it was error to grant judgment as if the motion for directed verdict had been sustained."

We conclude appellant offered sufficient evidence of negligence and proximate cause to require the issue determined by the jury. The trial court erred in directing a verdict for the appellee. Let us examine appellee's contention that a rag he found in the vent caused the poisonous fumes and resulting injury. He testified that he and his employee, Bill Bevil, went to the church on the day of and after the injury, took flashlights and examined the entire gas system he had installed. He said he found a rag in the ventilator. He did not use Bill Bevil to corroborate his self-serving testimony. He also said that there were "two or three" other people about the church and when asked if he showed the rag to them or told them about it, he said "No."

Genetta Coe, one of the trustees of the church, testified she was at the church that evening and that appellee did not tell her anything about finding a rag.

Nether Davis, a member of the church and Master of Ceremonies on the tragic day, stated appellee did not tell her anything about having found a rag in the vent.

Sherman Wilkerson, Chief of Police of Leitchfield, testified he talked with appellee and that the latter did not mention finding a rag.

Floyd Johnson testified he was at the church most of the evening and that appellee did not mention a rag at all. He, as well as all the other witnesses, testified the first time they heard of the rag story was during the first trial in circuit court.

Hon. James T. Bevil, Sr., three-term Mayor of Leitchfield, testified he went with appellee to the church about seven o'clock the evening of the alleged injury and that if appellee mentioned a "rag," he didn't remember it.

Katie Bruce was in the hospital unconscious. Numerous other people were sick. There was widespread distress in the little church. We may assume appellee heard about, or suspected gas fumes, otherwise he would not have come crawling under the floor with a flashlight that evening. It is putting it mildly to say he must have been concerned. He was looking for the cause of the trouble. He admittedly told no one until the day of the trial. It was for the jury to accept or reject this contention.

We have not discussed the numerous cases cited by appellee. Those cases have been considered, however, and we might say they point us to sound legal principles. The trouble is we do not find them to pertain to like or similar situations to those found in the present case. James v. England, Ky., 349 S.W.2d 359, appears to be nearest the present case, factually. However, in the James case plaintiff lost because of failure to show proximate cause. The Court pointed out in that case there were two other factors involved contributing to the proximate cause, and that "these three factors combined *could have caused* the lack of oxygen," and the resulting death.

The judgment is reversed with directions to grant appellant a new trial.