Myrna L. SATTERLY, Appellant,

v.

Pauline S. STILES and Martin Transfer and Warehouse Company, Inc., Appellees.

Court of Appeals of Kentucky.

Sept. 30, 1966.

Rehearing denied Jan. 20, 1967.

C. M. Leibson, Louisville, for appellant.

Victor W. Ewen, John L. Bennett, Jr., Louisville, for appellees.

DAVIS, Commissioner.

As she was walking across Hill Street in Louisville the appellant was struck and injured by an automobile operated by appellee Stiles. Appellant sued Mrs. Stiles for damages, and joined as a defendant the appellee Martin Transfer and Warehouse Company, Inc., (hereinafter Martin) asserting that one of Martin's drivers negligently assured appellant that she could cross the street in safety. The trial court directed a verdict in favor of both defendants below at the conclusion of the plaintiff's testimony. This appeal presents the question whether there was sufficient evidence to make a jury issue as to the liability of either or both of the defendants.

■ Although there are some discrepancies in the testimony presented for appellee, we must test the propriety of the directed verdict by indulging the inferences and constructions most favorable to the appellant fairly and reasonably ascribable to the evidence. Johnson v. Vaughn, Ky., 370 S.W. 2d 591, 597. By that approach, the appellant's evidence warrants the following statement of facts.

The accident occurred on a clear, dry afternoon in April. Appellant was attempting to walk from the south side to the north side of Hill Street when she was struck by the car. Hill Street is a two-way, four-lane thoroughfare, running in an east-west direction. Admittedly, appellant was not in a crosswalk, but was walking across Hill Street at a point five or six car lengths east of the intersection of Hill and 12th Streets.

At the time appellant started across the street the automatic traffic signal at 12th and Hill was "stop" for traffic along Hill Street—thus, there was no eastbound traffic in the two southernmost lanes of Hill Street between the 12th Street intersection and the point where appellant started across the street. There were some cars in the southernmost or inside westbound traffic lane on Hill Street; these vehicles were

stopped in obedience to the electric traffic light at 12th Street. One of those so stopped was a truck of appellee Martin. The driver of the Martin truck signalled to appellant that he would remain stopped in order to permit her to walk in front of his truck. Accordingly, appellant walked across the two eastbound lanes and across the southernmost westbound lane (in front of the Martin truck). Then she stopped, at which time the driver of Martin's truck looked into his right rear-view mirror and indicated to her that the inside (northermost) westbound traffic lane was clear. Thereupon appellant looked toward the east to determine whether any traffic was approaching in the inside or "curb" lane. She saw that no vehicle was in that lane and started to cross the lane; when she had taken "one or two" steps she was struck by the Stiles car which had "whipped out" of the line of traffic in which the Martin truck was stopped. At the time the Stiles car "whipped out" it was about 110 feet from appellant, and she thought it was travelling about 40 to 45 miles per hour. The Stiles car struck appellant, after laying down skid marks 15 to 20 feet in length before the impact. The skid marks of the Stiles car were noted for 40 to 45 feet after the impact; the car came to rest at a slight angle against the north curb of Hill Street; the rim of the right front wheel was bent. Appellant testified on direct examination in part:

"Q77. Now, would you tell us whether or not you formed an opinion as to how fast that car was going when it came around there?

A. 40 to 45 miles an hour.

Q78. Do you feel sure in your mind that it was going that fast?

A. Yes.

Q79. How long did it take that car to get up on you?

A. One or two seconds.

Q80. Was it quickly?

A. Yes.

Q81. Did you have time to do anything after you saw that car start around?

A. No."

A witness testified that there was a movement of traffic on Hill Street just prior to the accident—from which it may be inferred that the traffic signal at 12th Street had changed to "go" for Hill Street traffic. Appellant suggests that an inference could be made that Mrs. Stiles had observed the change of the traffic signal and swerved to the outside lane in order to "beat" the standing line of traffic. The record reflects that Mrs. Stiles had lost her son in a downtown store, had reported him lost, and was on her way to get her husband—presumably to assist in locating the child—at the time of the accident.

 Appellant recognizes the statutory requirement that a pedestrian shall yield the right-of-way to automobiles when crossing a roadway at any point other than within a marked or unmarked crosswalk. KRS 189.570(4). Our decisions implementing the statutory proscription of "jaywalking" are discussed in appellant's brief, and effort is made to distinguish them from the case at bar. Some of the decisions so discussed are: Music v. Waddle, Ky., 380 S.W.2d 203; Travis v. Embry, Ky., 257 S.W.2d 64; Turner v. Fields, Ky., 309 S.W.2d 752; McKinney v. Ballard, Ky., 352 S.W.2d 200; Clark v. Smitson, Ky., 346 S.W.2d 780 and Severance v. Sohan, Ky., 347 S.W.2d 498. The trial court held that appellant was guilty of contributory negligence as a matter of law in crossing Hill Street outside of any crosswalk; appellant insists that the "yield" requirement imposed upon a pedestrian by the statute—and upheld in the cited cases—must not be inflexible. Appellant contends that it could not be negligence for the pedestrian to cross a street, even outside a crosswalk, when there is no approaching vehicle discoverable by exercise of ordinary care. Thus, it is reasoned, since appellant could not see the Stiles car when she looked eastward down the northernmost lane on Hill Street, nor could she

be expected to anticipate that the Stiles car would pull out of traffic, she was not negligent. We are not so persuaded. It must be borne in mind that the roadway is primarily designed for vehicles, and except at designated crosswalks, the motorist has the right to expect that the roadway will be free of pedestrians. The pedestrian is charged with knowledge that motor vehicles will travel the street in all traffic lanes. We do not consider it to be unreasonable to suggest that appellant might very well have expected—and thus have foreseen—that a car would pull into the traffic lane just as the Stiles car did. We, find nothing in the factual situation at bar which may be said to take this case outside the rule as applied in the cited cases.

Appellant would equate this case with one in which a pedestrian crosses between intersections when no vehicle is in sight, but the pedestrian is struck by a car suddenly pulling from the curb, or from a drive. It is reasoned that the "yield" duty imposed on the pedestrian must give way if it be shown that the pedestrian, through no negligence, had no reasonable opportunity to yield. Without elaboration upon that theory, we are of the view that the factual situation at bar would not bring the appellant within the ambit of the theory anyway. Appellant admittedly saw automobiles using one westbound traffic lane, and there simply is no way to rationalize away her negligence in placing herself into the perilous situation which resulted in her injuries. It is our view that the trial court correctly ruled that the appellant was guilty of contributory negligence as a matter of law.

Appellant urges that the doctrine of "last clear chance" is applicable here, and that at least the case should have been submitted to the jury upon that theory. Reliance is placed upon Chism v. Lampach, Ky., 352 S.W.2d 191, and Riley v. Hornbuckle, Ky., 366 S.W.2d 304.

In Chism, the pedestrian was not crossing the street, but was walking on the right-hand paved surface, in violation of KRS 189.570(6). The defendant-motorist admitted that he saw the pedestrian so walking when he was 150 to 200 feet from her, and he took no precautionary action to avoid striking her, except to sound a "beep" on his horn when he was about 50 feet from her. In that case we said the "last clear chance" doctrine entitled the pedestrian to go to the jury. (As noted in Barker v. Danville Const. Co., Ky., 389 S.W.2d 931, KRS 189.570(4) is not applicable to persons walking *along* the highway, as opposed to *crossing* the highway; in the latter situation KRS 189.570(6) is applicable). We think it is obvious that the Chism decision does not rule the present case.

As respects the decision in Riley v. Hornbuckle, Ky., 366 S.W.2d 304, it is plain that the facts of that case raised a justifiable inference that the helpless plight of the negligent pedestrian was discoverable by the motorist for a sufficient time and space to permit the motorist to avoid the accident. So long as the pedestrian and the motorist have equal opportunities to avoid the accident, neither may be said to have the "last" chance—they simply have concurrent chances. As noted in the Riley opinion " * * * there is usually a point in time at which the curtain closes on the ability of the pedestrian to get out of the way of a faster-moving vehicle while it yet remains open for the driver to shift his course. Whether that interim constitutes a 'clear' chance ought to be left to the jury." Tested by that principle, there is no basis in the present record for submitting an issue as to whether the appellee Stiles had a "clear" chance to avoid striking appellant. If we should assume that appellee Stiles was negligent[1] in deviating from the inner westbound lane to the curblane, and further assume that she was negligently driving 45 miles per hour, in ex-

---

1. We are not holding or suggesting that Mrs. Stiles was guilty of negligence in this maneuver.

cess of the stated speed limit of 35 miles per hour, all of this "assumed" negligence was antecedent negligence, and may not be reckoned in the "last clear chance" question. Severance v. Sohan, Ky., 347 S.W.2d 498, 501. We are then left to examine what "chance" was available to appellee Stiles during the time appellant took her "one or two" steps into the curb-lane. If the car of appellee Stiles was not in the curb-lane when appellant looked, then it is obvious that the car came into that lane after appellant looked—then the car had to cover the space between it and appellant within the split second required for appellant to take her "one or two steps." Appellant characterized her pace in walking as "hurriedly." It is virtually impossible to perceive how the Stiles car could have travelled 110 feet while appellant was taking "one or two" steps, but assuming that it did (as appellant's evidence states), we are entirely unable to envision that brief time elapsing while appellant took "one or two" steps "hurriedly" as being a sufficient interval to afford to appellee Stiles a last, clear, chance to avoid the collision.

As appellant suggests, if the car travelled at 45 mph, it would go about 66 feet per second. It must be recalled that appellant was not within the normal line of vision for appellee Stiles until appellant emerged from in front of the Martin truck; since the Stiles car had to come from behind the Martin truck (or the line of traffic in which the Martin truck was stopped) it necessarily travelled somewhat at an angle as it changed lanes. In such circumstances it may well be doubted that the driver's vision would have included the position of appellant until the Stiles car had practically straightened itself into the curb-lane. In substance, appellant had positioned herself so that she could not see, nor could she be seen, until she "cleared" the Martin truck. Assuming a "reaction" time of ¾ths second (as is suggested in the record) the Stiles car would have gone nearly 50 feet before any braking could take place. The skid marks indicated that the brakes were applied some 15 to 20 feet before the impact; this leaves unaccounted for the 40 to 45 feet in which the brakes could have been applied during the estimated 110 feet that appellee Stiles travelled in the curb-lane. It is apparent that those "unaccounted for" feet could have been consumed in the brief interval required to change the car from one lane to the other. In any event, there is no evidence that the Stiles car could have been brought to a stop within 110 feet, assuming an original speed of 45 mph. We think it becomes clear, from the "hindsight" splitting of seconds and estimating reaction times that the "chance" afforded appellee Stiles was not a "clear" one, if indeed it was any chance at all.

■ There was no basis for submission of the case to the jury as respects the liability of Martin. Without undertaking an exploration of the so-called "good Samaritan" principles, it is plain that appellant did not rely on the alleged assurances of the Martin driver for her entrance into the curb-lane. She testified that she assured herself that the curb-lane was safe, and she must have known that the Martin driver had no means of determining whether any traffic would turn into the curb-lane from the inner westbound lane. Assuming, without deciding, that appellant had a right to rely on the assurances of the Martin driver up to the point of her passing in front of the Martin truck, she clearly did not rely on any such assurance as she walked into the lane where she was struck. Thus there is no causal connection between her injuries and any activity of the Martin driver.

Appellant complains of certain adverse rulings incident to admissions and rejections of evidence. None of the matters complained of, even if all were decided favorably to appellant, would affect the basic questions of contributory negligence and last clear chance. In view of what we have said, the questions thus raised become immaterial and we shall not discuss them.

The judgment is affirmed.