Frank E. HADDAD, Jr., et al., Appellants,

v.

LOUISVILLE GAS & ELECTRIC COM-
PANY et al., Appellees.

Court of Appeals of Kentucky.

Oct. 31, 1969.

As Modified on Rehearing Feb. 6, 1970.

Freeman B. Blackwell, Harris J. Berman, Robert A. Kohn, Louisville, for appellants.

O. Grant Bruton, Gerald Kirven, Miles R. Thacker, Louisville, for appellees.

DAVIS, Commissioner.

Appellants prosecuted actions for the alleged wrongful deaths of William Lindsey and William Forbes against Louisville Gas & Electric Company and Ruth Wathen. At the conclusion of all the evidence, the

trial court directed a verdict in favor of Louisville Gas & Electric Company, but because of default in answering by Ruth Wathen, it directed the jury to assess damages on each claim against Ruth Wathen. Pursuant to the verdict, judgment went against Ruth Wathen in favor of the Forbes estate in the sum of $51,317 and for $6,137 in behalf of the Lindsey estate. The personal representatives of the decedents prosecute the original appeal contending that the court erred in directing a verdict in favor of L G & E. Ruth Wathen brings her cross-appeal seeking reversal of the judgments against her.

Ruth Wathen owned a one-story frame residence on Parthenia Avenue in Louisville. On December 30, 1964, Ruth's son, Roy Wathen, visited his mother's home and found her and Lindsey in a semiconscious and incoherent state. Roy took his mother to Sts. Mary & Elizabeth Hospital and telephoned for the police to attend to Lindsey. Lindsey was admitted to the Louisville General Hospital that same day. The records of General Hospital indicate that Lindsey's condition was diagnosed as toxic encephalopathy, etiology unknown. The physicians who treated him at General Hospital were unable to determine what toxic agent caused his condition.

Five or six days after Ruth Wathen entered the hospital, she was discharged, and Roy took her back to her home. Roy related that shortly after he left his mother at home "she fell out again. A neighbor called me and I went back over and took her back to the hospital." He related that his mother was again in a semiconscious condition when he found her the second time. Roy said that he called his mother's doctor who was still uncertain as to the source of her trouble, but who suggested that Roy should have an inspection of a gas floor furnace which served the premises. Roy then called L G & E, the supplier of the natural gas burned in the furnace. L G & E sent its "trouble man," Raymer, to investigate. The records of L G & E reflect that the call for Raymer was received at 8:05 a. m. on January 6, 1965, and Raymer reached the Wathen residence at 8:35 a. m. that day, where he met Roy Wathen who was with Raymer during Raymer's investigation of the furnace and other gas appliances in the house. Roy said that he "probably" told Raymer that two people had been "overcome with gas or something" and that he had been advised by the doctor to have the house checked. It was Raymer's recollection that Roy had told him about his mother's having been made ill, but he could not remember Roy's mentioning Lindsey's experience. At any rate, Raymer's investigation disclosed that the vent pipe serving the furnace was not functioning properly. He noted abnormal gas fumes coming up from the furnace and recognized that the furnace, as improperly vented, was a hazardous and highly dangerous thing. He also noted some abnormal fumes emanating from a gas water heater but did not regard that situation as critical. Raymer said that he had no equipment with him whereby he could accurately gauge whether the fumes contained carbon monoxide, but he expressed his opinion that they did. Raymer told Roy Wathen of the dangerous condition and advised him to have the furnace repaired. He said that Wathen assured him that no one would occupy the residence until Wathen had been able to have the necessary repairs performed.

The furnace was equipped with a three-way control valve permitting (1) the pilot and main burner to be shut off, (2) the pilot only to operate, and (3) the pilot and main burner to operate. There was a thermostat serving the furnace which was designed to control the operation of the main burner. Raymer testified that he left the furnace in "on pilot position" and that the main burner was off and "could not come back on regardless of the thermostat setting."

On January 7, 1965, about 6 p. m., Roy Wathen went to his mother's residence with Carl Thomas, a service man, with a view to having the furnace repaired. Roy

and Thomas discovered the dead bodies of Lindsey and Forbes when they entered the residence. A deputy coroner investigated the matter and determined that both men had died from carbon-monoxide poisoning, and carbon monoxide was coming from the floor furnace. Postmortem tests reflected carbon-monoxide saturation of 36% as to Lindsey and 61% as to Forbes. At the time the bodies were discovered, the thermostat on the floor furnace was set for maximum heat. A wine bottle and a whiskey bottle were found near the bodies. The facing was knocked off the back door. Both Roy Wathen and Raymer testified that the front and back doors were locked when they left the premises on January 6. The clear inference discernible from Wathen's testimony is that entrance was gained to the house by breaking the back door.

It is not clear from the record whether the main burner of the floor furnace was in an operable condition when Roy Wathen returned with Carl Thomas, but it is clear that carbon monoxide in fatally dangerous quantity was coming from the floor furnace. Throughout the trial and in its brief here, L G & E has insisted that it had neither the duty nor the authority to turn off the floor furnace, even though its representative found that appliance to be emitting highly dangerous carbon-monoxide fumes.

The trial court entered findings of fact and conclusions of law. The conclusions of law noted by the trial court were:

(1) The only duty owed by L G & E was to protect the public against injury or damage arising from leaks or other defects in its lines, or leaks of which it had notice in its customer's lines. (Citing Holsclaw's Adm'r v. L G & E Co., 267 Ky. 56, 100 S.W.2d 805.)

(2) L G & E did not voluntarily assume to repair the vent condition, and therefore no duty can attach to it by implication. (Citing Louisville Cooperage Company v. Lawrence, 313 Ky. 75, 230 S.W.2d 103.)

(3) Actionable negligence must rest upon a showing of a duty, a violation of that duty, and consequent injury. The absence of any one of those factors is fatal. (Citing Howard v. Fowler, 306 Ky. 567, 207 S.W.2d 559.)

(4) There was no duty imposed by law upon L G & E to repair the furnace even though it may have had notice of a defective condition.

■ We are unable to accept as correct the trial judge's view of the narrow scope of L G & E's duty. Simply put, L G & E admits that it has the duty and authority to shut off a customer's gas appliance if it discovers a gas *leak* in the appliance's operation, but contends that it has no duty or any authority to shut off an appliance which does not evince a gas *leak*, even though that appliance is found to be emitting highly dangerous carbon-monoxide fumes. We are of the opinion that L G & E did have the duty to do something protective when its employee discovered the highly dangerous condition of the furnace. Cf. Current v. Columbia Gas of Kentucky, Ky., 383 S.W.2d 139; Bruce v. Alley, Ky., 391 S.W.2d 678; Smith's Adm'x v. Middlesboro Electric Company, 164 Ky. 46, 174 S.W. 773, Ann.Cas.1917A, 1164. It is said in 138 A.L.R. 888:

"Whenever a gas company undertakes to make an inspection of pipes and appliances of a consumer of gas it must exercise care and diligence to make a thorough and adequate inspection and make the necessary repairs; *or, in the alternative, shut off the supply of gas* until the consumer has made the necessary repairs or replacements." (Emphasis added.)

■ It will be observed that this principle does not impose on the company any initial duty to make an inspection of a consumer's appliances, or any duty to serve or police the appliance field. The stated duty grows out of an inspection which the company has chosen to make. We accept the principle as just stated and conclude that

the trial court was in error in the conclusions of law upon which the directed verdict in favor of L G & E was based.

█ It is familiar law, however, that a correct decision will not be disturbed on appeal merely because it was based on an incorrect ground or reason, and this is especially so where the correct grounds were presented to the trial court but not acted upon by it. 5 Am.Jur.2d, Appeal and Error, Section 727, page 170; Commonwealth v. McCauley's Ex'r, 166 Ky. 450, 179 S.W. 411. We find that principle applicable here.

█ As we have observed, it is our view that L G & E did have a duty to do more than it did when it learned of the critically dangerous condition of the floor furnace. However, that duty was owed only to persons whose presence on the dangerous premises was foreseeable. It was shown without contradiction that Roy Wathen assured L G & E's employee that the premises would remain unoccupied until repairs were effected to remedy the dangerous condition. So far as Raymer knew the only occupant of the residence was Ruth Wathen. Her son, acting in her behalf, assured Raymer that he would see to it that she did not reenter the house until the furnace was fixed. Indeed, she did not so enter.

In order for liability to be imposed upon L G & E, it must have violated some duty it owed to Lindsey and Forbes. Brauner v. Leutz, 293 Ky. 406, 169 S.W.2d 4. Since L G & E had no reason to foresee that any person would enter the premises, it had no duty to persons such as Lindsey and Forbes who did enter.

In these circumstances, a directed verdict for L G & E was correct, and the judgment entered upon it will not be disturbed even though the trial court's reasoning for directing the verdict was an improper one.

Near the close of the four-day trial and many months after answer was due from Ruth Wathen, as prescribed by CR 12.01, counsel for Mrs. Wathen appeared in open court for the first time and tendered a brief answer in her behalf. Objection to filing of the answer was made in behalf of the estates of Forbes and Lindsey, and the trial court refused to permit its filing and directed a verdict against Mrs. Wathen, submitting to the jury only the issue of damages. In her cross-appeal Mrs. Wathen assails that action of the court and contends that she was entitled to rely upon the defensive pleadings of L G & E, since L G & E had pleaded and proved defenses against the wrongful-death actions sufficient to defeat any theory of recovery by either of the plaintiffs. In support of this position Mrs. Wathen relies upon Tackett v. Green, 187 Ky. 49, 218 S.W. 468; Harrison's Heirs v. Deremiah, 5 Ky. (2 Bibb.) 349; Rucker v. Baker, 296 Ky. 505, 177 S.W.2d 878; Beddow's Adm'r v. Barbourville Water, Ice & Light Company, 252 Ky. 267, 66 S.W.2d 821; and Welch v. Mann's Ex'r, 261 Ky. 470, 88 S.W.2d 1.

█ The general rule respecting whether the pleaded defenses of one defendant may inure to the benefit of a defaulting defendant is stated in 78 A.L.R. 939 as being recognized "with practical unanimity":

"* * * in actions against several defendants jointly, where the defense interposed by the answering defendant is not personal to himself * * * but common to all, as where it goes to the whole right of the plaintiff to recover at all, as distinguished from his right to recover as against any particular defendant, or questions the merits or validity of the plaintiff's entire cause of action in general, or his right to sue, such defense, if successful, inures to the benefit of the defaulting defendants both in actions at law and suits in equity, with the result that final judgment must be entered not merely in favor of the answering de-

fendant, but also in favor of the defaulting defendants."

Accepting this as a valid rule, it is of no avail to Mrs. Wathen, because the defense on which L G & E has been successful is personal to L G & E, it being that L G & E had no duty to the decedents because it had no reason to foresee their presence in the house. The defense did not go to the validity of the plaintiffs' entire cause of action, but only to their right to recover against L G & E.

The judgment is affirmed on the original appeal and on the cross-appeal.

All concur.