Gwynith RAYMER, Administratrix of the Estate of Ronald Latney Raymer, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Marilyn GILL, Administratrix of the Estate of David R. Gill, Deceased, Intervening Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 76–0119–0(B).

United States District Court, W. D. Kentucky, Owensboro Division.

June 22, 1978.

Harold M. Streets, Greenville, Ky., Charles A. Williams, Paducah, Ky., William P. Hurley, Jr., Edward Ewen, Jr., Louisville, Ky., Damon Vaughn, Henderson, Ky., for plaintiffs.

James P. Klapps, Asst. Chief, Torts Section, U. S. Dept. of Justice, Washington, D. C., Albert Jones, U. S. Atty., W. D. Ky., Louisville, Ky., for defendant.

## ORDER AND MEMORANDUM OPINION

BALLANTINE, District Judge.

This matter is pending on the motion of the United States for summary judgment.

Plaintiffs' decedents were killed when the vehicle in which they were riding overturned. It is alleged, and for the purposes here it will be assumed, that the vehicle failed to meet the safety standards required by the Federal Coal Mine Health and Safety Act, that the roadway on which the accident occurred failed to comply with safety standards set up by the Act, Title 30 U.S.C. Section 801 et seq., and that the United States failed to require compliance.

The pivotal question is whether the Congressional mandate that the Secretary of the Interior (now the Secretary of Labor) develop, promulgate and revise mandatory safety standards for mines and the failure to enforce those standards has the effect of imposing common law tort liability on the United States under the Federal Tort Claims Act, Title 28 U.S.C. Sections 2674 and 2680(a).

■ It is well settled that one who undertakes to render service for another which he recognizes as necessary for the protection of the other is liable for physical harm resulting from his failure to exercise due care if his failure to exercise due care results in increased risk of harm. See Restatement, Law of Torts 2d, Section 323.

28 U.S.C. Section 2674 imposes tort liability on the United States "to the same extent as a private individual under like circumstances."

■ Negligent conduct, to be actionable, must be based on a duty, a breach of that duty and resultant damage. Plaintiffs urge that the United States owed a duty to their decedents to enforce the regulations, that they failed in this duty and that the plaintiffs were damaged thereby.

The troublesome question is whether the United States owed a duty to the decedents to enforce the regulations. No case involving mining regulations has been cited or found. In *Clemente v. United States,* 567 F.2d 1140 (1st Cir. 1977), cert. denied 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978), one may find a comprehensive discussion of the bases of government tort liability. In *Clemente* liability was sought to be imposed upon the United States for the failure of Federal Aviation Administration inspectors to warn plaintiffs' decedents that the aircraft on which they were about to embark was overweight and lacked a proper crew. The action arose when the airplane was lost in the Caribbean. The District Court held the United States liable, reasoning that the duty to inspect and warn was generally created by the passage of the Act and was precisely created by the adoption of regulations. *Clemente v. U. S.,* 422 F.Supp. 564 (D.P.R.1976). In reversing, the Court of Appeals said at page 1145:

"There was no underlying statutory duty to offer special protection to plaintiffs' decedents; the failure to inspect in no way added to the risk of injury to the passengers or crew; and there is no evidence that anyone relied on the contents of SO 8430.20C and limited their own safety precautions accordingly. Therefore there can be no basis for liability under general principles of tort law and the Federal Tort Claims Act.

To hold otherwise would be to interpret every command made as an exercise of discretion by the supervisory or administrative staff of any federal agency as creating a duty of the federal govern-

ment to the beneficiaries of that command such that the government would be liable to the beneficiary if the command was not carried out. We do not believe the Federal Tort Claims Act was intended to expose the government to such limitless liability and would not so hold unless we were required to do so by established precedent. Indeed, because the policy implications of finding liability on the grounds suggested here would be so severe, and because the surrender of sovereign immunity by the government should be interpreted narrowly, we must subject to critical scrutiny the cases cited by the district court to support its conclusion that the Federal Aviation Act and the Southern Region's order created an actionable duty on the part of the federal government."

In the case before this Court there is no indication that any law permits the Commonwealth of Kentucky to place upon private persons the duties cast upon federal officers by the Federal Coal Mine Health and Safety Act. It is well settled in Kentucky that if the governmental agency owes no legal duty to a specific person, there is no basis for asserting liability against the agency. See *Frankfort Variety Inc. v. City of Frankfort,* Ky., 552 S.W.2d 653 (1977).

Plaintiffs argue that the government, having undertaken to act by adopting regulations and monitoring the operation of the mine, has placed itself within the ambit of the common law rule that he who assumes to act must exercise due diligence. Restatement, Torts 2d, Sections 323 and 342A. Since the Federal Tort Claims Act dictates that the law of the place where the injury occurred shall govern, we must determine Kentucky's posture. Kentucky adopts the Restatement rule, supra. See *Haddad v. Louisville Gas & Electric Co.,* Ky., 449 S.W.2d 916 (1970). If plaintiffs are successfully to resist the motion of the United States, it must be found that *Clemente v. U. S.,* supra, is not controlling.

The statute in *Clemente* confers discretionary authority upon the administrator. 49 U.S.C. Section 1354(a) reads as follows:

"The Administrator is empowered to perform such acts, to conduct such investigations, to issue and amend such orders, and to make and amend such general or special rules, regulations, and procedures, pursuant to and consistent with the provisions of this chapter, as he shall deem necessary to carry out the provisions of, and to exercise and perform his powers and duties under, this chapter."

Clearly, such direction to the Administrator falls far short of the stringent mandates of the Federal Coal Mine Health and Safety Act.

30 U.S.C. Section 811(a) provides:

"The Secretary shall, in accordance with the procedures set forth in this section, develop, promulgate, and revise, as may be appropriate, improved mandatory safety standards for the protection of life and the prevention of injuries in a coal mine, and shall, in accordance with the procedures set forth in this section, promulgate the mandatory health standards transmitted to him by the Secretary of Health, Education, and Welfare."

It is readily apparent that Congress intended to impose upon the United States a nondelegable duty to supervise the safe operation of the Nation's mines.

Reading further, we find the following language in the Act:

"Authorized representatives of the Secretary shall make frequent inspections and investigations in coal mines each year for the purpose of (1) obtaining, utilizing, and disseminating information relating to health and safety conditions, the causes of accidents and the causes of diseases and physical impairments originating in such mines, (2) gathering information with respect to mandatory health or safety standards, (3) determining whether an imminent danger exists, and (4) determining whether or not there is compliance with the mandatory health or safety standards or with any notice, order, or decision issued under this subchapter. . . ." 30 U.S.C. Section 813(a).

The foregoing excerpts from the Act lead to the inescapable conclusion that the United States is charged with the responsibility of monitoring the operation of the Nation's mines. There is no discretionary function or duty involved. The mine inspectors have specific statutory and regulatory duties, the negligent performance of which will result in the imposition of liability on the defendant. In *Downs v. United States*, 522 F.2d 990 (6th Cir. 1975), a claim was made by the survivors of victims of a hijacking incident. In holding the United States liable, the Court found that the FBI agent in charge of the rescue attempt acted negligently in carrying out the formulated policy of the FBI. The Court said at page 997:

> "In this case, the FBI agents were not involved in formulating governmental policy. Rather, the chief agent was engaged in directing the actions of other Government agents in the handling of a particular situation. FBI hijacking policy was not being set as an *ad hoc* or exemplary matter since it had been formulated before this hijacking. Hijacking policy had previously been promulgated in the FBI Handbook and in a memorandum jointly issued by the Departments of Transportation and Justice. While the Government's guidelines for dealing with hijackings are secret and must remain so, we note that Special Agent O'Connor was not making policy in responding to this particular situation."

See also *Ingham v. Eastern Air Lines Inc.*, 373 F.2d 227, 238 (2d Cir. 1967); *Logue v. U. S.*, 463 F.2d 1340 (5th Cir. 1972).

In sum, the Court finds that, in assuming the duty to inspect and regulate mining operations, the U. S. formulated a policy, the negligent execution of which will render it liable. The Court further finds that an issue of fact exists as to whether or not there was negligent execution of that policy.

In accordance with the above, the motion of the United States for summary judgment is hereby denied.