Gwynith **RAYMER**, Administratrix of the Estate of Ronald Latney Raymer, Deceased; and Marilyn Gill, Administratrix of the Estate of David R. Gill, Deceased, Plaintiffs-Appellees,

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

No. 80–3033.

United States Court of Appeals,
Sixth Circuit.

Argued June 15, 1981.

Decided Oct. 9, 1981.

Rehearing Denied Oct. 9, 1981.

Alice Daniel, Asst. Atty. Gen., Civ. Div., Dept. of Justice, Washington, D. C., Albert Jones, U.S. Atty., Mikell T. Grafton, Asst. U.S. Atty., Louisville, Ky., Charles Mandolia, Raymond A. Nowak, Trial Attys., Torts Branch, James P. Klapps, Asst. Director, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D. C., for the U. S.

Harold M. Streets, Greenville, Ky., Charles A. Williams, Paducah, Ky., William P. Hurley, Jr., Edward T. Ewen, Jr., Louisville, Ky., Damon A. Vaughn, Elizabeth E. Vaughn, Henderson, Ky., for plaintiffs-appellees.

Before EDWARDS, Chief Judge, and LIVELY and KEITH, Circuit Judges.

LIVELY, Circuit Judge.

This appeal requires us to decide a question previously reserved by the court: Whether an action lies against the government under the Federal Tort Claims Act for alleged negligence of employees of the Bureau of Mines of the Department of Interior in performing inspection activities required by the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 et seq.[1]

1. The 1969 Act was superseded by the Federal Mine Safety and Health Amendments Act of 1977 which, *inter alia*, placed responsibility for enforcement of the Act in the Department of Labor. 30 U.S.C. § 802(a) (1976 ed., Supp. II).

(the 1969 Act). See *Collins v. United States*, 621 F.2d 832, 833 (6th Cir.), *cert. denied*, 449 U.S. 955, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980).

## I.

The plaintiffs are the personal representatives of Ronald Latney Raymer and David R. Gill who died in an accident while working at a strip mine of Peabody Coal Company in Muhlenberg County, Kentucky on January 8, 1972. Raymer and Gill were directed by a supervisor to take a "front end loader" to a distant part of the mine for the purpose of assisting in the removal of another vehicle which had become stuck. Raymer and Gill never arrived at their destination. Sometime later the front end loader was found overturned at a point 27 feet below an elevated "levee road." Both occupants were fatally crushed. There were no witnesses to the accident. The levee road was owned by the Tennessee Valley Authority, but was used by Peabody employees in going from one part of the strip mine operation to another.

The complaint of each plaintiff charged negligent inspection and negligent enforcement of the 1969 Act and "other negligence on the part of Bureau of Mines personnel . . ." as the basis for recovery under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and § 2671 et seq. (the FTCA). As developed in discovery and at trial the negligence charged consisted of the unwarranted granting of extensions of time to Peabody for the correction of one violation of the 1969 Act found by an inspector and the failure to discover and cite Peabody for a second alleged violation. On August 10, 1971 a Bureau of Mines inspector issued a citation to Peabody for violation of 30 C.F.R. § 77.403 (1971) which required roll over protection systems (ROPS) on mining equipment when necessary to protect the operator. This citation referred to front end loaders and bulldozers. The front end loader involved in the accident was not equipped with roll bars or other ROPS. Thereafter, this inspector and another one issued successive extensions of time for compliance with the August 10th citation. The final extension was granted on January 6, 1972, two days before the fatal accident. The plaintiffs also charged that the inspectors were negligent in not citing Peabody for failure to provide berms and guardrails on the elevated levee road, a claimed requirement of 30 C.F.R. § 77.1605(k) (1971).

The district court rendered two decisions in this case. In the first it entered an order and memorandum opinion denying the government's motion for summary judgment. *Raymer v. United States*, 455 F.Supp. 165 (W.D.Ky.1978). The memorandum opinion foreshadowed the later decision on the merits with its finding that, "in assuming the duty to inspect and regulate mining operations, the U.S. formulated a policy, the negligent execution of which will render it liable." *Id.* at 168. In granting judgment for wrongful death in favor of both plaintiffs following trial the district court concluded that the 1969 Act "imposes a duty on the defendant to see that mine safety regulations are vigorously and meticulously enforced." *Raymer v. United States*, 482 F.Supp. 432, 436 (W.D.Ky.1979). The breach of this duty which resulted in liability was stated thus: "In the case at bar, the Court finds that the affirmative act of perpetuating obviously hazardous conditions by granting unwarranted extensions to Peabody in the absence of any acceptable evidence that Peabody could not comply with the regulations amounts to actionable negligence for which the defendant is liable." *Id.* at 437.

The reference to the absence of evidence of Peabody's inability to comply with the August 10th citation relates to a disputed issue of fact. In granting the extensions the inspectors apparently relied on their knowledge that promulgation of the regulations had created a great demand for ROPS and that mine operators were experiencing difficulty in acquiring the kits used in equipping their machinery and vehicles with roll over protection. Further, there was some evidence that Peabody had placed an order for a kit to be used on the front

end loader. Nevertheless, the finding of the district court on this factual issue is not clearly erroneous, and it is treated as correct on appeal. Rule 52(a), Fed.R.Civ.P. The district court did not base its liability holding on any finding or conclusion with respect to the absence of berms and guardrails along the levee road though their absence was found, along with the absence of ROPS, to be a "substantial factor" in the deaths of the two employees. 482 F.Supp. at 435. The parties disagreed on whether such protection was required for the levee road or whether the regulation applied only to "haulage" roads. The district court did not resolve this issue.

## II.

### A.

The government makes three arguments on appeal. First, it contends that it is not liable to the plaintiffs because regulatory enforcement activities of mine inspectors constitute "discretionary functions." This argument is based on an exception contained in the FTCA, 28 U.S.C. § 2680(a):

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

**2.** Section 1346(b) provides:

(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of

The second argument is that regulatory enforcement activities do not give rise to "an actionable tort duty" cognizable under the Federal Tort Claims Act. In the third place the government argues that, assuming a duty existed, the court erroneously concluded that a breach of that duty was proven in this case. We examine the second argument, which appears dispositive.

### B.

The two provisions of the FTCA which establish jurisdiction in the district court for actions against the United States based on negligence of its agencies and employees are 28 U.S.C. §§ 1346(b) and 2674.[2] As shown by the texts reproduced in the footnote, both sections limit liability of the United States to those circumstances in which a private individual would be liable. The determination of whether a private individual would be liable under like circumstances is to be made "in accordance with the law of the place where the act or omission occurred." § 1346(b).

The district court examined the 1969 Act and concluded that it imposed a duty upon the government to enforce its provisions "meticulously" and that the granting of unwarranted extensions of its remedial order constituted a breach of this duty. The court further concluded that under Kentucky law a private individual would be liable for a similar breach of duty under like circumstances. Though the district court relied upon the language of the 1969 Act in finding for the plaintiffs, it did not hold that there is a private right of action under the Mine Safety Act. Rather, the 1969 Act was held to define the duty of the government and liability for the breach of

the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The pertinent portion of § 2674 provides:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, . . . .

this duty was founded on the Federal Tort Claims Act. We agree that the 1969 Act did not create a private right of action by mine employees against the government. See *Blessing v. United States*, 447 F.Supp. 1160, 1166 n.5 (E.D.Pa.1978).

## C.

The main thrust of the government's argument is that there is no liability under Kentucky law for negligence in the conduct of regulatory inspection and enforcement activities. The government contends that even where a federal statute or regulation imposes a specific duty on federal employees, there is no liability to beneficiaries of the statute or regulation under the FTCA if state law imposes no similar obligation or duty on private persons. The government maintains that the district court actually found liability on the basis of the requirements of the 1969 Act rather than on the basis of any state-created duty.

## D.

The plaintiffs argue that Kentucky recognizes the "good Samaritan" doctrine in the context of a third-party inspection. Under this doctrine one who undertakes an inspection and in doing so finds a danger has an obligation either to abate the danger or to see that the owner of affected premises does so. Thus they contend, once the government assumed the task of inspecting coal mines, with enforcement powers to correct violations of safety rules and regulations, it was required to act with reasonable care and is liable where it failed to do so. As did the district court, the plaintiffs rely principally on the decision of the Kentucky Court of Appeals (then the State's highest court) in *Haddad v. Louisville Gas & Electric Co.*, 449 S.W.2d 916 (Ky.1970).

## III.

### A.

It is clear that the government may not avoid liability under the FTCA on the ground that the activity giving rise to the claim involved "uniquely governmental" functions. Congress did not predicate liability on "such a completely fortuitous circumstance [as] the presence or absence of identical private activity." *Indian Towing Co. v. United States*, 350 U.S. 61, 67, 76 S.Ct. 122, 125, 100 L.Ed. 48 (1955) (footnote omitted); *Rayonier, Inc. v. United States*, 352 U.S. 315, 319, 77 S.Ct. 374, 376, 1 L.Ed.2d 354 (1957). Thus it is not determinative that private individuals do not engage in regulatory inspection and enforcement activities. If there are similar activities whose negligent performance by a private individual under like circumstances results in liability under applicable state law, a cause of action exists under the Federal Tort Claims Act.

In permitting suits by federal prisoners under the FTCA the Supreme Court held in *United States v. Muniz*, 374 U.S. 150, 159, 83 S.Ct. 1850, 1856, 10 L.Ed.2d 805 (1963), "the Government's liability is no longer restricted to circumstances in which government bodies have traditionally been responsible for misconduct of their employees." This echoes the earlier holding in *Indian Towing, supra*, that the Federal Tort Claims Act "cuts the ground from under" the doctrine of sovereign immunity. 350 U.S. at 65, 76 S.Ct. at 124. Thus decisions denying recovery against states and their political subdivisions on grounds of sovereign immunity are not germane to FTCA cases. The pertinent inquiry is whether state law makes a private individual, not the state or other political entity, liable for an employee's failure to exercise due care under like circumstances.

### B.

In *Haddad v. Louisville Gas & Electric Co., supra*, the Kentucky court held that a public utility had a "duty to do something protective" when its employee found a highly dangerous concentration of carbon monoxide while inspecting a floor furnace inside the residence of a customer. 449 S.W.2d at 918. The court made clear that the gas company had no duty to make an inspection or to "police" appliances generally but that the "duty grows out of an inspection which the company has chosen to make." *Id.* The plaintiffs argue that *Haddad* establishes the principle that a private

individual who undertakes an inspection of the premises of another is liable under Kentucky law for failing to abate a dangerous condition discovered during the inspection if that condition results in injury or damage.

We believe the plaintiffs read too much into *Habbad.* Every pertinent authority cited by the Kentucky court in its opinion emphasized the existence of a highly dangerous condition which would not be readily apparent to a member of the general public. *Bruce v. Alley,* 391 S.W.2d 678 (Ky.1965), concerned a furnace installer's liability for failing to vent a furnace in accordance with state safety standards. The plaintiff suffered carbon monoxide poisoning. In concluding that a jury issue was presented the court noted that natural gas is a "dangerous substance requiring a high degree of care" and that it can harm without being perceived. *Id.* at 680. In *Current v. Columbia Gas Co.,* 383 S.W.2d 139, 141 (Ky. 1964), the court remarked that carbon monoxide is colorless and odorless in concluding that the issue of a gas company's liability for cutting gas into an unvented space heater should be submitted to a jury. The earlier case of *Smith's Adm'x v. Middlesboro Electric Co.,* 174 S.W. 773 (Ky.1915), discussed at great length the nature of electricity and that it is little understood by most people. "It cannot be seen, and can only be felt, and when the effects of it are felt, it usually is too late for the victim to escape its more deadly effects." *Id.* at 778. In addition to the foregoing cases, the Kentucky court relied upon a quotation from A.L.R. on the duty of a gas company which undertakes an inspection of the pipes or appliances of a consumer.

This analysis indicates to us that *Haddad* would not be applied as broadly as the plaintiffs contend. The humane rule which *Haddad* establishes is that when members of the general public enlist the services of specially qualified persons to determine whether potentially dangerous substances do in fact constitute a danger, the persons so engaged have a duty to take some steps to abate any dangers found to exist. *Haddad* and the authorities upon which it was based all have as underlying premises danger from a substance whose presence is not obvious to a layman, an undertaking to inspect or install by one having superior knowledge of the dangerous substance, and reliance on the expertise of the person who assumes the undertaking. We must look beyond *Haddad.*

### C.

*Grogan v. Commonwealth,* 577 S.W.2d 4 (Ky.), *cert. denied,* 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979), is heavily relied upon by the government. That case arose from the tragic fire which occurred at the Beverly Hills Supper Club in a Kentucky suburb of Cincinnati on May 28, 1977. Suits were filed on behalf of the victims of the fire in which it was sought to hold both the city in which the club was located and the state liable for failure to enforce laws and regulations which established safety standards for the benefit of the public. The Supreme Court of Kentucky affirmed dismissal of the actions, holding that "a government ought to be free to enact laws for the public protection without thereby exposing its supporting taxpayers (including, of course, those yet unborn) to liability for failure of omission in its attempts to enforce them." *Id.* at 6. This conclusion was not based on sovereign immunity, which had previously been abolished in Kentucky, but on the fact that no cause of action for such an omission by a governmental agency had ever been recognized in Kentucky.

Throughout the *Grogan* opinion the court made it clear that it was not considering whether a private individual would be liable under similar circumstances:

Though appellants indulge the facile assumption that under similar circumstances a private individual would be liable at common law, we do not believe that the common law, as applied to individuals, offers any reasonably comparable analogy.

577 S.W.2d at 5, and:

Hence it is that in delineating the areas and extent of public responsibility we are dealing with a subject quite apart and

different from the world of individual and corporate relationships. There being no reasonable basis for comparison, there can be no discrimination.

*Id.* at 6. If the FTCA made the federal government liable to the same extent that the state of occurrence makes itself and its political subdivisions liable, then *Grogan* and *Commonwealth v. Brown*, 605 S.W.2d 497 (Ky.1980), also relied upon by the government, would appear dispositive. However, since liability under the federal act is dependent upon liability of private individuals under state law, these decisions are not conclusive.

### D.

A decision under Kentucky law which appears at first glance to support the plaintiffs is *Byrant v. Old Republic Insurance Co.*, 431 F.2d 1385 (6th Cir. 1970). There a divided court held that a workmen's compensation insurer did not share the employer's immunity from an action in tort under a Kentucky statute which permitted an injured employee to sue "some other person than the employer" who was legally liable under the circumstances. The claim was based on a negligent inspection, or failure to inspect by the insurance company. Nevertheless, *Bryant* was decided on a motion to dismiss and the court did not attempt to define what circumstances would make the "other person" liable. Both the majority and dissenting opinions acknowledged finding no Kentucky decisions on point.

In a case where the claim was identical to the one in *Bryant*, but which had been tried on its merits, the Fifth Circuit concluded there could be no recovery against the compensation carrier. See *Davis v. Liberty Mutual Ins. Co.*, 525 F.2d 1204 (5th Cir. 1976). The court was required to apply Alabama law in *Davis*. In doing so the court assumed that Alabama would follow Restatement of Torts, Second, § 324A in formulating a cause of action based on negligent inspection. Section 324A requires the establishment of at least one of three circumstances before there can be recovery by a third person for a negligent undertaking of this kind:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The *Davis* court found that none of the three requirements for liability had been established.

### IV.

### A.

■ There appears to be no Kentucky case which deals directly with the issue before us, and we have found no Kentucky case dealing with a truly analogous situation. Though *Haddad* is somewhat analogous, as we have pointed out, its particular features (and those of the cases it relied on) lead us to conclude that it did not announce a general rule of liability. Thus we are required to decide the case as we believe the Supreme Court of Kentucky would if the identical issue were presented to it.

We have found no Kentucky case specifically adopting Restatement of Torts, Second, § 324A, though it has been cited with apparent approval.[3] The requirements of the section are logical and appear to reflect accepted principles of duty and tort liability. We believe the Kentucky court would impose essentially the same requirements for recovery, whether or not it adopted the precise formulation of the Restate-

---

**3.** See *Rigsby v. Brighton Engineering Co.*, 464 S.W.2d 279, 282 (Ky.1970) (Reed, J., concurring). See also Comment d in Reporter's Notes to § 324A which is based on *Murray v. Cowherd*, 148 Ky. 591, 147 S.W. 6 (1912).

ment. Referring to the three tests of § 324A, it is clear that the extensions granted by the mine inspectors in the present case did not increase the danger of harm from operating the front end loader without ROPS. It merely permitted the continuation of an existing risk. We also conclude that the inspectors did not undertake to perform a duty owed by Peabody to the decedents and that there was no justifiable reliance by the decedents or Peabody on the mine inspectors' acts or omissions.

### B.

In *Indian Towing Co., supra,* 350 U.S. at 64–65, 76 S.Ct. at 124, the Supreme Court found that Congress intended to include liability under the "good Samaritan" doctrine within the scope of the Federal Tort Claims Act. The Court applied this doctrine to the facts before it in the following language:

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island *and engendered reliance* on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act.

350 U.S. at 69, 76 S.Ct. at 126 (emphasis added). The key to liability in the Supreme Court's definition appears to be that reliance be engendered by one who undertakes a service. Reliance was clearly one basis of the Kentucky court's decision in *Haddad, supra,* where the owner apparently suspected the presence of gas in her home, but requested the utility which furnished gas to inspect her property and determine whether a dangerous condition actually existed. Reliance was justified in both instances. In *Indian Towing Co.* the Coast Guard was the only person or entity rendering the service; in *Haddad* the gas compa-

ny, because of its expertise, became the responsible party, at least to the extent of foreseeable consequences, once it undertook the inspection. Compare *Satterly v. Stiles,* 409 S.W.2d 820, 824 (Ky.1967), ("Without undertaking an exploration of the so-called 'good Samaritan' principles, it is plain that appellant did not rely on the alleged assurances of the Martin driver for her entrance into the curb lane.").

In the present case such reliance was neither pled nor proven. The front end loader was not shown to have any defects which were known to the inspectors but hidden from the decedents and Peabody. There was no showing that either decedent or Peabody relied on the extensions granted by the federal inspectors in concluding that it was safe to use the vehicle without ROPS.

Furthermore, reliance would not have been justified in view of the scheme of the 1969 Act. Under the 1969 Act the role of the Bureau of Mines in promoting mine safety was strictly secondary. The Act provided that "*the operators of such mines with the assistance of the miners have the primary responsibility* to prevent the existence of such [unsafe and unhealthful] conditions and practices in such mines...." 30 U.S.C. § 801(e). The purpose of the Act was declared to be the establishment of mandatory health and safety standards for coal mines and "*to require that each operator of a coal mine and every miner in such mine comply with such standards....*" § 801(g) (emphasis added in both quotations). In the face of this language which completely negates the idea that responsibility for mine safety has been shifted to the federal government, it would have been unreasonable to rely on the mere failure of federal inspectors to require immediate abatement of the ROPS violation as an indication that the vehicle was safe. Our discussion of the provisions of the 1969 Act demonstrates that the second alternative basis of liability under § 324A, "he has undertaken to perform a duty owed by the other to the third person," was not satisfied. The mine operator's duty to the miners to maintain safe conditions was unaffected by

the 1969 Act and the mine inspectors did not assume this duty. In the absence of a Kentucky rule establishing private liability in an analogous case we conclude that the actions of the inspectors in the present case did not create liability under the Federal Tort Claims Act.

### C.

Our conclusion is supported by cases from other courts. In *United Scottish Insurance Co. v. United States*, 614 F.2d 188 (9th Cir. 1979), the court concluded that reliance is an integral part of the good Samaritan doctrine as applied in FTCA cases. The court also found that when a governmental agency carries out inspection functions "does not purport to relieve other actors of the primary duty to see that the underlying activity is accomplished safely or consistently with some other important public policy." *Id.* at 193. The court summarized its holding as follows:

> We thus hold that in the absence of a demonstration that the applicable state law requirements of the good samaritan doctrine are satisfied in any given case, the government may not be held liable pursuant to the Act for negligence in inspection of private activities or property, although federal statutes or regulations direct that government employees undertake the inspection activity.

614 F.2d at 195 (footnote omitted).

In *Clemente v. United States*, 567 F.2d 1140 (1st Cir. 1977), *cert. denied*, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978), the court held that failure of FAA employees to advise the crew and passengers of a chartered plane that the proposed flight was illegal imposed no liability under the FTCA. The court found it significant that there was no indication that the passengers or any one else relied on the FAA in this case. This lack of reliance was contrasted with the justifiable reliance which crews and passengers place on air traffic controllers. *Id.* at 1147–48. The court also noted that the pilot is responsible for a safe flight and that an administrative directive relied upon by the plaintiffs had not shifted the burden of potential tort liability to the government in view of "this primary locus of responsibility." *Id.* at 1149.

We are aware of opinions in which district courts have held that § 324A of Restatement of Torts, Second, has no application in Federal Tort Claims Act cases which rely on negligence of mine inspectors. See *Kilpatrick v. United States*, No. CA 79–P–1106–J (N.D.Ala. March 19, 1980); *Taylor v. United States*, 521 F.Supp. 185 (W.D.Ky. 1981). However, we conclude that the United States has undertaken to render services to others in adopting the 1969 Act, and that cases of this kind are properly resolved by applying the "good Samaritan doctrine" as the Supreme Court did in *Indian Towing*. Reliance is an essential element of that doctrine.

### D.

Our conclusion is that the Kentucky courts would not hold a private party who conducted an inspection pursuant to the terms of the 1969 Act liable under the circumstances developed by the evidence in this case. The duty of the mine inspectors was a secondary one. The mine operator and miners were primarily responsible for the safe operation of the mine. In the absence of a shifting of this responsibility, there could be no justifiable reliance by an individual miner on acts or omissions of the inspectors in a situation where the danger was not concealed or of such a nature that it could be recognized only by specially qualified persons.

Our conclusion that a private individual in Kentucky would not have been liable under the circumstances of this case makes it unnecessary to consider the other issues raised by the parties.

The judgment of the district court is reversed, and the cause is remanded with directions to dismiss the complaints.