Samuel **CHANEYFIELD**, Appellant,

v.

The **CITY OF NEW YORK** and Mathews & Chase, Appellees.

**No. 62, Docket 75–7183.**

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1975.

Decided Nov. 14, 1975.

Certiorari Denied April 5, 1976. See 96 S.Ct. 1509.

**1334**

William J. Corcoran, Corcoran & Brady, New York City, for appellant.

Roy E. Pomerantz, New York City (Kenneth J. Balkan and Kroll, Edelman, Elser & Wilson, New York City, on the brief), for appellees.

Before WATERMAN, OAKES and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from the dismissal of a complaint for personal injuries under the Federal Metal and Nonmetallic Mine Safety Act, 30 U.S.C. § 721 *et seq.* (hereafter the "Mine Safety Act"). Judge Richard Owen, of the United States District Court for the Southern District of New York, concluded that the Mine Safety Act did not apply under the facts and, as no other federal claim was alleged, he dismissed the complaint for lack of subject matter jurisdiction. We agree that the Mine Safety Act, enacted in 1966, confers no private right of action, and, although appellant seeks leave to amend his complaint, we affirm the dismissal of this action.

On September 13, 1971, appellant was the engineer of a Diesel locomotive being used to pull "muck cars" in a tunnel under New York City's West Side. The muck cars were used to remove rock debris, known as "Manhattan schist," which was excavated in the construction of the tunnel. This debris was removed from the tunnel at West 79th Street and Riverside Drive. It was then apparently sold and removed to New Jersey, where it was to be used as fill or foundation at a stadium project.

The tunnel was being dug as a portion of the North River Water Pollution Control Project, and is to serve as part of the City's sewer system. Appellee City owns the tunnel and contracted with appellant's employer, who is not a party to this suit, for its excavation. Appellee Mathews & Chase is the City's consulting engineer on the project.

Appellant's affidavit alleges that he was injured when nine of the ten loaded muck cars his locomotive was pulling became uncoupled. The detached cars at first rolled slowly after the locomotive as it pulled away. But then, as the incline turned downward, the uncoupled cars rolled faster and faster until they

crashed against the rear of the one remaining car. This jolt caused the appellant to fall from the locomotive, resulting in severe injuries to his left arm.

It is appellant's contention that the tunnel project is a "mine" within the meaning of the Mine Safety Act, 30 U.S.C. §§ 721(b), 722(a). He argues that the appellee City as owner of the "mine" and Mathews & Chase as its supervising agent are liable to him for any injuries he sustained due to unsafe mine conditions.

The Mine Safety Act was, as appellant correctly asserts, doubtless enacted for the purpose of extending federal supervision of mine safety to mines of all type and character (other than coal and lignite mines which are regulated by a different statute, the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 *et seq.*). As such the Mine Safety Act requires the Secretary of Interior to designate mandatory safety standards after public hearing, 30 U.S.C. § 725; it authorizes the Secretary to order the closing of dangerous mines, or areas thereof, or of those in which there has been a failure to abate violations of the mandatory safety standards, 30 U.S.C. §§ 727–28; it establishes a "Safety Board of Review" to review the Secretary's closing orders, 30 U.S.C. §§ 729–30; and it establishes judicial review of the Safety Board's orders, 30 U.S.C. § 731. The Act further provides that the Secretary may seek injunctions to enforce orders made under the Act, 30 U.S.C. § 733(a), and that criminal penalties may be levied against a mine operator for refusal to obey valid orders where the failure to comply could result in death or serious bodily harm, 30 U.S.C. § 733(b). The statute, however, explicitly does not "enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or

liabilities of employers and employees . . . in respect of injuries . . . arising out of, or in the course of, employment." 30 U.S.C. § 738(c).[1]

Neither anything in the Mine Safety Act nor any authority referred to us by counsel or discovered by us upon research purports to suggest that the Act creates a private right of action by an injured employee against the mine operator, or the operator's agents, for violation of the Act. Congress knows full well how to create a private civil right of action to protect employees from dangerous working conditions. Two obvious examples are the Federal Employers' Liability Act, 45 U.S.C. § 51, and the Jones Act, 46 U.S.C. § 688. The plain language chosen by Congress to effect its remedial purpose in those enactments suggests, by contrast to the absence of such expression in the Mine Safety Act, that the governmental purpose of insuring mine safety is to be achieved by government regulation, rather than by private civil actions.

It is true that in *J. I. Case Co. v. Borak,* 377 U.S. 426, 432–34, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), for example, the Supreme Court held in connection with Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), that private rights of action for investors could be implied since the statute was for the "protection of investors." Similarly, the Mine Safety Act is plainly aimed at the protection of miners. However, the implication of a direct private action under the Mine Safety Act cannot be supported by analogy to *Borak.* The Securities and Exchange Act specifically provided in Section 27, 15 U.S.C. § 78aa, a grant of jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created" under that Act. The Supreme Court relied on

---

1. 30 U.S.C. § 738(c) provides in full as follows:

    Nothing in this chapter shall be construed or held to supersede or in any manner affect the workmen's compensation laws of any State or territory, or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under State or territorial laws in respect of injuries, occupational or other diseases, or death of employees arising out of, or in the course of, employment.

that general enforcement jurisdiction to infer a provision for private remedies under the Securities and Exchange Act in *Borak, supra,* 377 U.S. at 430–31, 84 S.Ct. 1555. By contrast, the Mine Safety Act provides for no such general jurisdiction, and further specifically denies that it may be construed to "enlarge, diminish or affect" the rights and liabilities of private parties regarding employment-related injuries. 30 U.S.C. § 738(c).

Under the Mine Safety Act, the role of the courts does not go beyond review and enforcement of orders made under the Act by the Secretary of the Interior. *See* 30 U.S.C. §§ 731, 733. It is wholly through the instrument of the Secretary's safety standards, inspections and compliance orders that the Act regulates the conditions of mines, with the view of accommodating both the interests of mine operators and mine workers. *See* 30 U.S.C. §§ 726, 729(c). In view of the purely regulatory nature of the Mine Safety Act scheme, we read the congressional segregation of the Act from private remedies in 30 U.S.C. § 738(c) at face value. We do not perceive the Act to have created jurisdiction in the federal district courts for the enforcement of private remedies as part of the arsenal for effectuation of regulations and orders made under the Act. This conclusion wholly comports with the legislative history of the Act as set forth in the Senate Report and the Conference Report, 1966 U.S.Code Cong. & Admin. News, pp. 2846, 2872 (individual views of Senator Javits), p. 2883. Appellant is, therefore, relegated to his state law claims[2] and we need not face here the rather troublesome question, somewhat lightly discussed by the court below, whether the operation in which appellant was working was indeed a "mine" under the broad definition of that term in the Mine Safety Act, 30 U.S.C. § 721(b).[3]

As an afterthought, appellant argues, for the first time in this court, that he should be permitted before final dismissal to amend his complaint to the same set of facts under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51. His ingenious, if rather far-fetched, suggestion, primarily based on *Kach v. Monessen Southwestern Railway Co.,* 151 F.2d 400 (3d Cir. 1945) (wholly intrastate movement, if part of continuous movement which eventually crosses state border, can be "in commerce" within meaning of the term as used in FELA), is that because the Manhattan schist excavated in this project is transported in commerce from New York to New Jersey, and since he was injured in a railroad-type accident[4] in connection with the initial stage of such transportation, the owner of the "railroad" is "liable in damages" for the injury under the FELA, 45 U.S.C. § 51.

Granting that only appellant's complaint and not his action technically has been dismissed, the question is whether a remand is required here solely for the purpose of permitting an additional allegation of FELA jurisdiction. It is true that a motion to dismiss a complaint before trial should ordinarily be granted only with leave to amend. The action itself should be dismissed only after the time granted for amendment has ex-

---

**2.** We gathered at argument that he has pursued his workmen's compensation claims against his own employer. The record also shows that he has a state action pending, apparently for products liability and negligence, against the coupling manufacturer, as well as Mathews & Chase and several defendants other than the City of New York. (Affidavit of Attorney William J. Corcoran in Opposition to Motion to Dismiss.)

**3.** 30 U.S.C. § 721(b) provides simply that "[t]he term 'mine' means (1) an area of land from which minerals other than coal or lignite are extracted . . . ." 30 U.S.C. § 722(a) adds the additional requirement that, to be subject to the Act, the mine must be one "the products of which regularly enter commerce . . . ."

**4.** We say railroad-type accident because, obviously, appellant alleges that he was employed as a "locomotive engineer" operating a "Diesel locomotive" used to push and pull "muck cars" on narrow gauge (36-inch) "railroad tracks" in the tunnel at the time of the uncoupling accident.

pired. A number of cases, including our own *Klebanow v. New York Produce Exchange*, 344 F.2d 294, 299–300 (2d Cir. 1965), and *Neeff v. Emery Transportation Co.*, 284 F.2d 432, 434–35 (2d Cir. 1960), say that for the trial court to refuse leave to amend at this stage of the pleadings is to abuse its discretion. *See* 3 J. Moore, Federal Practice ¶ 15.10, at 957 & n.2 (1974 ed.). But here neither Judge Owen's memorandum decision ordering dismissal of the complaint, entered on February 25, 1975, nor the judgment order from which appeal is taken provided for leave to amend. True, appellant could have and perhaps should have moved below for relief under Fed.R.Civ.P. 59(e) or 60(b), that is, to reopen the judgment to permit the amended pleading, rather than have taken his appeal. 3 J. Moore, *supra*, ¶ 15.07[2], at 855; ¶ 15.10, at 959–60. Indeed there is authority, chiefly in the Ninth Circuit, for the proposition that appeal from grant of a motion to dismiss a *complaint* is premature, because the "final order" is the one which dismisses the action. *See* 2A J. Moore, *supra*, ¶ 12.14, at 2338–39; 9 J. Moore, *supra*, ¶ 110.-13[1], at 152, citing, *e. g.*, *Richardson v. United States*, 336 F.2d 265, 266 (9th Cir. 1964). *But see Stewart v. Lincoln-Douglas Hotel Corp.*, 208 F.2d 379, 381 (7th Cir. 1953) (where district court intended by its order dismissing complaint to terminate litigation and plaintiff by promptly taking appeal elected to stand on complaint, order was final and appealable).

We are inclined, however, to adopt the practical assumption that by not seeking relief below appellant intended that we treat the district court order as if the action had been dismissed. 9 J. Moore's *supra*, ¶ 110.13[1], at 153. As the Supreme Court has observed in a case involving a premature appeal, it is "too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 230, 9 L.Ed.2d

222 (1962) (technical defect in notice of appeal which did not prejudice appellee). In the interest of avoiding unduly technical constructions of the Federal Rules we will, therefore, treat the district court order as final. *See* 9 J. Moore, *supra*, ¶ 204.14. And in the spirit of the Rules we will examine the complaint to see whether it could be deemed if amended to state an FELA claim. If so we can remand to permit such amendment; if not we can affirm.

The FELA applies only to a "common carrier by railroad. . . ." 45 U.S.C. § 51. This means "one who operates a railroad as a means of carrying for the public . . . ." *Wells Fargo & Co. v. Taylor*, 254 U.S. 175, 187–88, 41 S.Ct. 93, 98, 65 L.Ed. 205 (1920) (express company not common carrier). *See also Edwards v. Pacific Fruit Express Co.*, 390 U.S. 538, 540, 88 S.Ct. 1239, 20 L.Ed.2d 112 (1968) (refrigerator car companies not common carriers). The question what is a "common carrier by railroad" is one which frequently causes difficulty where the use of railroad equipment is involved. *Compare McCrea v. Harris County Houston Ship Channel Navigation District*, 423 F.2d 605 (5th Cir.), *cert. denied*, 400 U.S. 927, 91 S.Ct. 189, 27 L.Ed.2d 186 (1970) (political subdivision operating terminal facilities maintaining railroad trackage at a bulk material handling plant and public grain elevator not a common carrier), *with Lone Star Steel Co. v. McGee*, 380 F.2d 640 (5th Cir.), *cert. denied*, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967) (steel company performing rail services for itself and others held a common carrier). But here neither the City of New York nor Mathews & Chase, its consulting engineers, can in any way be considered to have held themselves out to the public as carriers of the Manhattan schist on the underground "railroad" here involved. Only one shipper was, and only one could have been, served by this "railroad," and that shipper was the project itself.

■ Construing appellant's complaint most favorably to his position, we cannot conclude that the City operates the

project railroad "as a means of carrying for the public." We therefore need not concern ourselves with the argument that the "railroad's" shipments are "in commerce." *See Kach v. Monessen Southwestern Railway Co., supra,* 151 F.2d at 401.

Even had appellant been granted leave to amend his complaint below (as would have been the preferable form of order below) or had moved under Rules 59 and 60 for relief from the court's order (as would have been the preferable practice), the district court would have been compelled to dismiss this complaint and its underlying action. Accordingly we affirm the judgment.

Judgment affirmed.