**David Daniel GUNNELLS, Administrator of the personal estates of David Daniel Gunnells, Jr., Martha Elizabeth Gunnells and Jessie Gunnells, Deceased; Drema Gail nee Crowder Hopson, Administratrix of the estates of Nancy Ann Hopson and Angela Jean Hopson, Deceased; Drema Gail nee Crowder Hopson, Dannie Hopson and David Daniel Gunnells, Individually, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 75–0026–H.**

United States District Court, S. D. West Virginia, Huntington Division.

March 31, 1981.

---

Glyn Dial Ellis, Logan, W. Va., for plaintiffs.

James S. Arnold, Charleston, W. Va., for defendant.

## MEMORANDUM ORDER

STAKER, District Judge.

This action is presently before this court on plaintiffs' motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and defendant's motion to dismiss, pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

The claims of the plaintiffs herein arise out of the Buffalo Creek flood disaster of February 26, 1972, in Logan County, West Virginia. Plaintiffs allege that as a proximate result of defendant's negligence, Buffalo Creek Dam, a water impoundment, ruptured and caused the wrongful deaths herein, property damage, mental pain and anguish, and additional costs and expenses.

More specifically, plaintiffs allege that Pittston Company (Pittston) owned, operated, maintained and controlled a coal operation located approximately three miles north of Lundale, Logan County, West Virginia, and that the coal operation, and certain water dams, were under the direct supervision of the United States Army Corps of Engineers and the United States Bureau of Mines. It is further alleged that the employees of these governmental agencies failed to require Pittston to conform to the regulations as set forth under the Federal Coal Mine Health and Safety Act of 1969 (Mine Act), 30 U.S.C. § 801 *et seq.*, and Section 13 of the Rivers and Harbors Act of 1899 (Refuse Act), 33 U.S.C. § 407, thereby proximately causing plaintiffs' damages; that defendant's agencies were aware for a long period of time that certain dams of Pittston constituted a hazard and direct threat to the plaintiffs; that defendant's agencies knew the dams violated the applicable laws of the United States and West Virginia; and that they did nothing to remedy or remove said hazards.

The plaintiffs brought this action pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, wherein Congress has waived sovereign immunity

from suit for certain specified torts committed by federal employees. The legislative history, however, indicates that Congress did not intend that the United States Government be subject to liability arising from acts of a governmental nature or function. *See* 28 U.S.C. § 2680(a); *Dalehite v. United States*, 346 U.S. 15, 27–28, 73 S.Ct. 956, 963–964, 97 L.Ed. 1427 (1953). "Uppermost in the collective mind of Congress were the ordinary common-law torts." *Id.* at 28, 73 S.Ct. at 964.

■ According to 28 U.S.C. § 2674, the United States is liable with respect to tort claims "in the same manner and to the same extent as a private individual under like circumstances . . . ." Thus, plaintiff has a valid claim pursuant to section 2674 if defendant's acts which were alleged to have been negligent or wrongful would have been so and would have constituted lawful basis of recovery under applicable state law had they been committed by a private individual. *See Zabala Clemente v. United States*, 567 F.2d 1140 (1st Cir. 1978), *cert. denied*, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); *Devlin Lumber & Supply Corp. v. United States*, 488 F.2d 88 (4th Cir. 1973). However, in order to protect the government against claims, even though negligently caused, that affect governmental functions, Congress enacted section 2680 wherein certain acts of federal employees are excepted. Under this section, one of the exceptions to government liability arises when federal employees are exercising discretion in the performance of governmental functions or duties, regardless of whether or not there is an abuse of discretion. *Dalehite, supra* 346 U.S. at 33, 73 S.Ct. at 966.

Therefore, in order for plaintiffs herein to maintain their cause of action against the United States, they must show that employees of the Corps of Engineers, under the Refuse Act, or employees of the Bureau of Mines, under the Mine Act, are liable in the same manner and to the same extent as would be a private individual under like circumstances and that the employees had an affirmative, non-discretionary duty to act concerning the safety of the water dam involved herein.

Plaintiffs, by their counsel, contend that as a result of the Mine Act, certain standards were set and certain regulations were created, both of which relate to mining safety. *See* 30 C.F.R. §§ 77 *et seq.* Plaintiffs further contend that this Act creates an affirmative, non-discretionary duty on the employees of the Bureau of Mines to discover and cause to be abated unsafe conditions which result from the violations of these standards and regulations. The Bureau of Mines allegedly did inspect Pittston's water dams, yet allowed the hazardous conditions to continue unabated.

In addition, the Corps of Engineers allegedly had knowledge of, yet did nothing to alleviate, the hazardous condition of the water dam in question. The Refuse Act prohibits the discharge of any refuse matter of any kind or description whatsoever into any navigable waters of the United States. Plaintiffs allege that the Buffalo Creek water dams were violative of this standard; that the Corps of Engineers had knowledge of these violations and had an affirmative, non-discretionary duty to enforce the statute; and that the Corps failed to prohibit Pittston from unlawfully depositing refuse in navigable waters, thereby causing the injuries to plaintiffs herein.

Plaintiffs further contend that if the court will take judicial notice of the Hearings before the Subcommittee on Labor of the Committee on Labor and Public Welfare, United States Senate, 92nd Congress, 2nd session on the Buffalo Creek Disaster, then the court will see that the reason for the failure of the Buffalo Creek dam was that each of those federal agencies charged with the responsibility of enforcing the federal statutes abstained from enforcing them and was waiting for the State or coal operator involved therein to do so. The hazards, therefore, were allowed to culminate in the great Buffalo Creek Disaster.

The defendant contends that neither the Bureau of Mines nor the Corps of Engineers has an actionable duty to enforce the provisions of the Mine Act or the Refuse Act and

that neither Act gives rise to an implied private right of action. Defendant further contends that negligent enforcement of federal statutes is not actionable under the FTCA since a suit brought against the United States cannot be predicated on mere failure of federal employees to enforce or comply with a federal statute or regulation absent the violation of some common law duty under applicable state law.

### Discretionary Function or Duty

A discretionary function or duty is defined as including:

> [More] than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. *Dalehite, supra* 346 U.S. at 35–36, 73 S.Ct. at 967–968 (footnote omitted).

In spite of the court's attempt to define "discretionary function or duty" in *Dalehite,* courts have failed to reach uniform conclusion as to what is, or is not, discretionary in nature. For instance, one court has held that Congress intended to impose a non-discretionary duty on the part of federal employees to supervise the safe operation of the nation's mines pursuant to the Mine Act. *Raymer v. United States,* 455 F.Supp. 165 (W.D.Ky.1978), *appeal docketed,* No. 80–3033 (6th Cir.). Another court, however, has held that decisions made by federal employees as to investigation and enforcement of the regulations in the Mine Act are policy judgments and therefore are discretionary. *Bernitsky v. United States,* 620 F.2d 948 (3rd Cir. 1980), *aff'g,* 463 F.Supp. 1121 (E.D.Pa.1979), *cert. denied,* —— U.S. ——, 101 S.Ct. 208, 66 L.Ed.2d 90. The decision of whether or not to prosecute possible statutory violations of the Refuse Act has also been held to be an exercise of broad discretion. *Anderson v. Norfolk &*

*Western Ry.,* 349 F.Supp. 121 (W.D.Va. 1972).

There appears, however, to be an insufficient factual basis in the record at the present time upon which a decision can be rendered concerning the question of whether or not the employees of the Bureau of Mines or the Corps of Engineers were exercising a discretionary function or duty. This is of no great import since the motions being considered herein can be decided on other jurisdictional grounds.

### Private Cause of Action

Section 2674 of the FTCA requires that there must exist a private cause of action in order for the plaintiffs to prevail against the United States. Neither the Mine Act nor the Refuse Act expressly provides for a private right of action, so the court must determine if such action is implied by either Act.

Under the Refuse Act, it is unlawful to discharge, or cause to be discharged, any refuse matter into any navigable water of the United States or into any tributory of any navigable water. 33 U.S.C. § 407. Any person or corporation violating this provision is guilty of a misdemeanor, punishable by fine, imprisonment, or both. 33 U.S.C. § 411. The Act relates to the deposit of refuse into navigable waters and was enacted for the purpose of protecting navigation and anchorage and not to create a private cause of action unrelated to navigation or anchorage. The majority of the courts have held that the Act precludes private suits and have thus refused to find any implied private cause of action. *Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81, 85–87 (2d Cir. 1972); *Anderson v. Norfolk & Western Ry. Co.,* 349 F.Supp. 121, 122 (W.D.Va.1972); *Red Star Towing & Transportation Co. v. Department of Transportation,* 423 F.2d 104, 105 (3d Cir. 1970); *Guthrie v. Alabama By-Products Co.,* 328 F.Supp. 1140 (N.D.Ala. 1971), *aff'd,* 456 F.2d 1294 (5th Cir. 1972), *cert. denied,* 410 U.S. 946, 93 S.Ct. 1352, 35 L.Ed.2d 613, *rehearing denied,* 411 U.S. 910, 93 S.Ct. 1524, 36 L.Ed.2d 201 (1973).

**758**

Under the Mine Act, federal mine inspectors from the Bureau of Mines,[1] pursuant to their regulatory authority, are authorized to investigate and to inspect mines for the purpose of determining whether mine operators are complying with health and safety standards promulgated by the Mine Act. Failure on the part of the operator to comply with the standards can result in a closure order if the condition constitutes an "imminent danger." 30 U.S.C. § 814(b). The Mine Act also provides for administrative review by the Secretary (§ 816) and assessment of both civil and criminal penalties (§§ 819(a) and (b)). The federal agents' role is to enforce the federal law, but only against those conditions which are actually observed during periodic inspections. The Mine Act was designed to insure adequate safety and health standards in coal mines through federal regulations and a comprehensive system of enforcement.

These judgmental decisions of mine inspectors on whether or not to exercise their regulatory enforcement powers under the Mine Act should not be tested through private civil actions. *Holland v. United States*, 464 F.Supp. 117, 124 (W.D.Ky.1978); *Smith v. United States*, 375 F.2d 243, 248 (5th Cir. 1967); *Bernitsky v. United States*, 463 F.Supp. 1121 (E.D.Pa.1979), aff'd, 620 F.2d 948 (3d Cir. 1980), cert. denied, —— U.S. ——, 101 S.Ct. 208, 66 L.Ed.2d 90. Congress decided to enforce safety standards in the mines by administrative regulation, not by private civil actions.

Courts have also held that it was not the intent of Congress to create a private cause of action under the Federal Metal and Nonmetallic Mine Safety Act, 30 U.S.C. §§ 721 et seq., and a claim based on the failure of federal employees to enforce a federal statute or regulation will fail unless there is also a violation of some common law duty under applicable state law. *Carroll v. United States*, 488 F.Supp. 757 (D.Idaho 1980); *Mosley v. United States*, 456 F.Supp. 671 (E.D.Tenn.1978); *Chaney-*

*field v. City of New York*, 525 F.2d 1333 (2d Cir. 1975), cert. denied, 425 U.S. 912, 96 S.Ct. 1509, 47 L.Ed.2d 763 (1976). Such federal inspection provisions have no counterpart in private activity and do not create liability under common law. *Mosley v. United States, supra* at 674.

The duties of Occupational Safety and Health Administration (OSHA) officers have been found by the courts to be federally imposed, thereby requiring a corresponding duty under state law in order to support a claim under the Act. *Blessing v. United States*, 447 F.Supp. 1160 (E.D.Pa. 1978); *Davis v. United States*, 536 F.2d 758 (8th Cir. 1976). The Miller Act has also been found to have no implied counterpart in private activity. *McMann v. Northern Pueblos Enterprises*, 594 F.2d 784 (10th Cir. 1979); *Devlin Lumber & Supply Corp. v. United States, supra.*

A review of the cases cited herein establishes that there can be no private cause of action, either express or implied, where plaintiff's claim is based on a violation of a federal statute or regulation in the absence of a violation of some duty under the appropriate state law. See also *Geo. Byers Sons, Inc. v. East Europe Import Export, Inc.*, 463 F.Supp. 135, 137 (D.Md.1979); *Gelley v. Astra Pharmaceutical Prods. Inc.*, 610 F.2d 558 (8th Cir. 1979). This does not mean that jurisdiction is not conferred should the governmental activity have an analogous private conduct which would give rise to liability. See *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252 (2d Cir. 1975); *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

It is therefore necessary to look to the law of West Virginia. There must exist a counterpart to the federal duty which has allegedly been violated. The violation by federal employees of the Mines Act and the Refuse Act must give rise to liability under state law, through violation of some common law duty or statute. *Zabala Clemente*

---

1. The Bureau of Mines was subsequently renamed the Mining Enforcement and Safety Administration (MESA), and effective March 9, 1978, became known as the Mine Safety and Health Administration (MSHA).

*v. United States, supra; Devlin Lumber & Supply Corp. v. United States, supra.* This court, therefore, must determine whether the law of West Virginia imposes liability for negligence in the enforcement of governmental regulations found in the two above-mentioned Acts.

Neither party has cited, nor has this court found, any state law, either by virtue of the pronouncements of the common law or by legislative enactment, which recognizes a cause of action for a private individual's negligence in the inspection of mines and in the enforcement of federal health and safety regulations. This has also been found to be the situation by courts in other states. *See Mosley v. United States, supra; Raymer v. United States, supra; Carroll v. United States, supra; Blessing v. United States, supra.* Absent the Mine Act, the United States had no duty to inspect Pittston's water dams or to enforce federal safety standards.

Some states, however, recognize a private right of action under the theory that when the United States undertakes to render a service for another, then it becomes a good samaritan and is liable for negligent non-performance or failure to exercise due care. *See* Restatement (Second) of Torts, § 323; [2] *Raymer, supra* at 166; *Bernitsky v. United States, supra; Indian Towing Co. v. United States, supra.*

 Even if the West Virginia law does recognize the Good Samaritan Rule, plaintiffs herein cannot recover from the United States pursuant to the FTCA. The services rendered by the Bureau of Mines and by the Corps of Engineers were not for the benefit of the plaintiffs. Inspection and enforcement of the Mine Act's standards are for the benefit of the miner by increasing the health and safety of the coal mine environment. Regulation and enforcement of the Refuse Act's standards are for the benefit of preventing obstruction to navigation. Plaintiffs are not beneficiaries of whatever services the two Acts provide, nor can they be considered to be foreseeable third-party beneficiaries. Under the Good Samaritan Rule, the United States can be held liable for the negligent rendering of services only if the negligence causes injuries to persons on whose behalf the services are being performed or to foreseeable third-parties. *See Blessing, supra* at 1187.

For the foregoing reasons, the court finds that there is no actionable claim against the defendant upon which relief can be granted, and the court further finds that it lacks jurisdiction over the subject matter.

It is accordingly ORDERED that defendant's motion to dismiss shall be, and the same is hereby, granted, whereas plaintiff's motion for summary judgment shall be, and the same is hereby, denied.

---

**2.** Section 323 states as follows:

§ 323. Negligent Performance of Undertaking to Render Services

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.